**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TERRY MURPHY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO.  CIV-07-0118-HE |
| | ) | |
| THE KICKAPOO TRIBE OF | ) | |
| OKLAHOMA, in its capacity as a federally | ) | |
| chartered corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Plaintiffs Terry Murphy and Roger Lackey filed this action against the Kickapoo Tribe of Oklahoma ("Tribe"), asserting breach of contract and fraud claims. Plaintiff Lackey contends the Tribe hired him to provide general maintenance services at its casino, but then wrongfully discharged him for filing a workers' compensation claim.  Plaintiff Murphy alleges he was hired to service/clean the casino's air purifiers, but the Tribe breached their agreement by failing to pay the amount owed and by prematurely terminating the contract. The plaintiffs also allege the defendant defrauded them by falsely advising them that the Kickapoo Tribal Court had exclusive jurisdiction over their claims.  They contend they filed suit in the Kickapoo Tribal District Court, but the court dismissed their complaints on the basis of sovereign immunity.

The defendant has moved to dismiss the case for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or, alternatively, for failure to state a claim under Rule

12(b)(6).[1]  Jurisdiction does not exist, the defendant contends, as an Indian tribe is neither a foreign country nor a citizen of a state for purposes of diversity jurisdiction and the plaintiffs have not pleaded a federal question.  The thrust of the defendant's argument, however, is that the court lacks subject matter jurisdiction because of the Tribe's sovereign immunity, which, it asserts, extends to tribal agencies and enterprises.[2]

An Indian tribe may be sued only if it waives its immunity or Congress has authorized the suit.  Miner Elec., Inc. v. Muscogee (Creek) Nation, ___ F.3d ___, ___ (10th Cir. 2007).  "'Tribal sovereign immunity is a matter of subject matter jurisdiction ...,'" *id.* at ___ (quoting E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302-03 (10th Cir. 2001), and the plaintiffs bear the burden of establishing the court's jurisdiction by a preponderance of the evidence.  Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).[3]

The plaintiffs essentially assert two bases for jurisdiction – the Indian Civil Rights Act ("ICRA), 25 U.S.C. §§ 1301-03, and a waiver of immunity in the Tribe's corporate charter.

---

[1]*Contrary to the plaintiffs' assertion, the defendant is not claiming lack of personal jurisdiction.  The motion to dismiss standard they cite from Behagen v. Amateur Basketball Ass'n of the United States, 744 F.2d 731 (10th Cir. 1984) and Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291 (10th Cir. 2004) is applicable to motions challenging in personam, not subject matter, jurisdiction.*

[2]*The defendant also claims the plaintiffs are barred from proceeding in federal court because they failed to exhaust their remedies by appealing the tribal court's dismissal of their actions.  As the court finds the defendant is immune from suit, it will not address the exhaustion argument.*

[3]*When determining whether subject matter jurisdiction exists, a court may consider matters outside the pleadings.  See Southway, 328 F.3d at 1274.*

Relying on the Dry Creek exception to tribal sovereign immunity,[4] they claim the Tribe violated ICRA by denying them due process.[5] However, the Tenth Circuit has "emphasized the need to construe the Dry Creek exception narrowly in order to prevent a conflict with Santa Clara," Walton v. Tesuque Pueblo, 443 F.3d 1274, 1278 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 587 (2006), stating the Dry Creek rule has "minimal precedential value." *Id.* The exception applies "when three circumstances are present: (1) the dispute involves a non-Indian; (2) the dispute does not involve internal tribal affairs; and (3) there is no tribal forum to hear the dispute." *Id.* While the first two factors are present here, the third is not, as "[a] tribal court's dismissal of a suit as barred by sovereign immunity is simply not the same thing as having no tribal forum to hear the dispute." *Id.* at 1279.[6] Unfortunately, "[t]he proposition that tribal immunity is waived if a party is otherwise left without a judicial remedy is inconsistent with the reasoning of Santa Clara Pueblo." Ute Distrib. Corp. v. Ute Indian Tribe, 149 F.3d 1260, 1266 n.8. (1998). ICRA does not furnish the court with jurisdiction

---

[4]*In Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, 623 F.2d 682 (10th Cir. 1980), the Tenth Circuit recognized an exception to the Supreme Court's ruling in Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978) that ICRA did not waive tribal immunity in general and that Congress intended the Act to waive tribal immunity only as to habeas corpus relief.*

[5]*ICRA provides, as a matter of statute, for many of the same protections against tribal authority as would, in the case of federal or state authority, be provided as a matter of constitutional law. The statutory rights protected by ICRA include the requirement that no tribe exercising powers of self government "deprive any person of liberty or property without due process of law." 25 U.S.C. §1302(8).*

[6]*The court does not find any basis for concluding that the asserted lack of an appeals process in the tribal courts affects its determination that the plaintiffs do not have a claim under ICRA.*

over the plaintiffs' claims.

A closer question is whether the defendant Tribe's "sue and be sued" clause in its corporate charter "constitute[s] a waiver of immunity of the tribal corporation." *Id.* at 1268. The plaintiffs argue, citing Gaines v. Ski Apache, 8 F.3d 726, 729-30 (10th Cir. 1993), that they dealt with an incorporated entity. They claim the Tribe started "a business venture separate from its Tribal entity (i.e. a business entity operating pursuant to its federal Corporate Charter)," plaintiffs' response p. 5, that is subject to suit.

"Section 476 of the Indian Reorganization Act, 25 U.S.C. § 476, authorizes Indian Tribes to organize a constitutional entity, and § 477 authorizes organization of a corporate entity." Ramey Constr. Co., Inc. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 320 (10th Cir. 1982). A tribe that becomes a corporation by being chartered under § 477 may be considered a citizen of the state of its principal place of business for purposes of diversity jurisdiction.[7] Gaines, 8 F.3d at 729. A corporation that a tribe charters pursuant to its own tribal laws is similarly treated. *Id.* However, the corporate and constitutional entities are distinct and a consent to suit clause in the corporate charter does not "affect[] the sovereign immunity of the Tribe as a constitutional entity." Ramey Constr. Co., Inc., 673 F.2d at 320. *See* Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson, 874 F.2d 709, 716 n.9 (10th Cir.1989) ("This court has held that the presence of such a clause in a tribal corporate charter

---

[7]*As the defendant notes, the complaint does not allege that the principal place of business for the Tribe or the casino is a state other than Oklahoma, which allegation would be required for the court to have diversity jurisdiction.*

does not waive the tribe's immunity as a tribe."). Therefore, the issue to be resolved here is, in what capacity was the Tribe acting in creating and/or operating the casino. In other words, although the plaintiffs did sue the Tribe as a "federally chartered corporation," is "the tribal corporate entity ... both a named and proper defendant in this case." Ute Distrib. Corp.,149 F.3d at 1269 (emphasis added).

The record shows that the plaintiffs contracted and dealt with the Kickapoo Tribe of Oklahoma as a constitutional entity, and not with a tribal corporate entity.[8] The Tribe's Chairman has attested that the Tribe operates in accordance with its constitution and the evidence before the court reflects that the casino was established by the business committee of the Tribe and that committee was created by the Tribe's 1977 constitution. *See* defendant's Exhibits 1,3,5.

The plaintiffs assert that the fact that the Kickapoo Special Business Committee, rather than the Tribal General Counsel, "handl[ed] the groundwork for establishing the Kickapoo Casino ... establishes beyond legitimate question that said commercial activities were the acts of the Kickapoo Tribe in its federally chartered capacity and not in its capacity 'as a political governing body.'" Plaintiffs' response, p 10 (quoting Ute Distrib. Corp.,149

---

[8]*The plaintiffs have not offered evidence controverting that submitted by the defendant. "[N]o showing has been made that either the tribe or [the casino] is a corporation for purposes of diversity jurisdiction." Gaines, 8 F.3d at 730. Contrary to the plaintiffs' assertion, the defendant did not, on page 7 of its motion, "expressly admit[]that the Murphy/Lackey Complaint does successfully **state** a 'claim that the Defendant operates the Kickapoo Casino under the Corporate Charter of the Kickapoo Tribe of Oklahoma.'" Plaintiffs' response, p. 7.*

F.3d at 1268). They fail, though, to cite any authority or evidence to substantiate this assertion. As noted by the plaintiffs, the business resolution creating the Kickapoo Casino does state that the Casino is to "be considered an enterprise separate and apart from the Kickapoo Tribe of Oklahoma." Defendant's Exhibit 5. However, the same resolution provides that "[t]he Kickapoo Casino is a wholly owned business of the Kickapoo Tribe of Oklahoma and will remain as such." *Id.* The fact that the Tribe is engaged in numerous commercial ventures is immaterial to the immunity determination. *See* Sac and Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir. 1995) ("In addition, we find that a waiver of sovereign immunity cannot be inferred from the Nation's engagement in commercial activity.")

It is the plaintiffs' burden to present affidavits or other evidence demonstrating the court's jurisdiction.[9] This they have not done.[10] The evidence before the court is that the

---

[9]*The plaintiffs argue that the Tribe, by maintaining an insurance policy for worker's compensation claims and having paid a settlement to Roger Lackey in his worker's compensation case, waived the right to assert sovereign immunity with respect to plaintiff Lackey's retaliatory discharge claim. A waiver by the tribe will be found only where it is clearly and unequivocally expressed.* Ute Distrib. Corp.,*149 F.3d at 1263. It cannot be implied in these circumstances.*

[10]*In support of their argument that the Tribe waived its sovereign immunity with respect to claims arising from its casino operation, the plaintiffs refer to the statement in the January 26, 2001, minutes of the Tribe's business committee meeting that "Charles Morris, Tribal Attorney General, will check on the Corporate Charter." However, that vague comment, alone, does not show that the casino was a separate corporate entity. See plaintiffs' Exhibit 1; defendant's Exhibit 3, Art. XIII, § 5. Similarly unpersuasive is their reliance on Article V, § 3 of the Compact of Self-Governance. Plaintiffs' Exhibit 2. The Compact was entered into by the Secretary of the Interior and "by the Kickapoo Tribe of Oklahoma Business Committee by the authority of the Constitution and Bylaws of the*

Casino "is a sub-entity of the Tribe rather than a separate corporate entity." Ramey Constr. Co., Inc., 673 F.2d at 320.

The court has previously stated its concern about tribes' assertion of sovereign immunity in cases such as this where, if sovereign immunity is not waived, plaintiffs will essentially be denied a forum for their claims.  Such a result is manifestly unfair to plaintiffs and implicates precisely the same underlying concerns as gave rise to the Dry Creek Lodge rule.  *See* Cohen v. Winkleman, No. CIV-05-1388-HE, slip op. at 8 (W.D.Okla. April 17, 2006).

The defendant suggests that waivers of sovereign immunity sometimes occur.  That is no doubt so, but it is of zero comfort to these plaintiffs to know that sovereign immunity is sometimes waived in other situations or by other tribes, or that Oklahoma tribes are thinking about adopting some version of a tort claims act, or that this defendant might have waived sovereign immunity for this case if it had decided, unilaterally and for itself, that the plaintiffs' claims have merit.  Defendant's opening brief, pp. 11-12.  The reality is that the Tribe's assertion of sovereign immunity eliminates any chance of a judicial determination

---

*Kickapoo tribe ...." Plaintiffs' Exhibit 2.  The Compact has no relationship to this case and its reference to the Tribe's responsibility "in the same manner as P.L. 93-638 contractors" does not affect the Tribe's sovereign immunity here.  See 25 U.S.C. § 450f(c); Walton, 443 F.3d at1280  ("In exchange for insurance coverage, the tribe agrees to waive its sovereign immunity with respect to suits arising out of the tribe's performance of its contractual duties ... In this case, however, Mr. Walton is not a party to a self-determination contract and his claims do not arise from any such contract.").  Finally, the defendant's purchase of insurance did not effect a waiver of  its sovereign immunity with respect to the plaintiffs' claims.*

of the merits of the plaintiffs' claims — claims for which a remedy would have existed had they been asserted against any other person or private entity in this commercial context or against other governmental entities possessing comparable aspects of sovereignty. By any reasonable standard, this result is unfair.[11] It most assuredly gives reason "to doubt the wisdom of perpetuating the [sovereign immunity] doctrine," Kiowa Tribe of Okla. v. Manufacturing Techs., Inc., 523 U.S. 751, 758 (1998).

If this court had the power to "fix" the situation, it would do so. However, that power resides with Congress or the appellate courts.[12] This court's obligation is to follow the law as it exists now. Applying that law to the circumstances reflected by the present showing, the defendant's motion to dismiss [Doc. #20] must be **granted** based on the defendant's assertion of sovereign immunity. This case is **DISMISSED** for lack of subject matter jurisdiction.

---

[11]*The court does not suggest, of course, that plaintiffs' underlying claims have substantive merit. The unfairness stems from the fact that we will never know whether there was merit to the claims — they are barred regardless.*

[12]*Santa Clara Pueblo, 436 U.S. at 57: "Congress has plenary authority to limit, modify or eliminate the powers of local government which the tribes otherwise possess."*

**IT IS SO ORDERED**.

Dated this 8th day of November, 2007.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

Case 5:07-cv-00118-HE   Document 28   Filed 11/08/07   Page 10 of 10